[Crim. No. 6117.   Second Dist., Div. One.   July 14, 1958.]

THE PEOPLE, Respondent, v. LOUIS JANISSE,
Appellant.

Walter L. Gordon, Jr., and James L. Garcia for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused in Count I of a violation of section 11714 of the Health and Safety Code in that he did on or about April 24, 1957, furnish to Gerald Lyle De Bere, a minor of the age of 16 years, a narcotic, to wit, marijuana. Count II charged defendant with a violation of the foregoing code section, in that on April 24, 1957, he furnished to Michael Stewart Coonce, a minor of the age of 15 years, a narcotic known as marijuana. It was further alleged that defendant had been previously convicted of a violation of section 11500 of the Health and Safety Code, a felony, in the Superior Court of Los Angeles County, on January 17, 1956. Defendant pleaded not guilty, and denied the prior conviction. When the cause was called for trial, a jury trial was duly waived, and by stipulation the cause was submitted on the transcript of the testimony adduced at the preliminary examination, each side reserving the right to offer additional evidence, which they did. Defendant was adjudged guilty on both counts. No finding was made on the allegation of a prior conviction. Defendant was sentenced to state prison on each count, the sentences to run concurrently. From the judgment of conviction defendant prosecutes this appeal.

The factual background surrounding this prosecution may be summarized as follows:

In April of 1957, the minor Coonce lived at 5018 Seventh Avenue, in the city of Los Angeles. Some 20 workmen were

engaged in the installation of a sewer in the immediate vicinity of said minor's home. Defendant was one of these workmen and worked "right in front" of the minor's home. On Tuesday morning, April 23, 1957, the two minors, accompanied by one Kenny, drove up to the home of Coonce and entered. When they returned to the automobile defendant spoke to them saying "something about us looking like we came out of the house smoking a joint." The minor Coonce "Just laughed" and all three entered the vehicle. The next morning, April 24, the minor De Bere again came to the home of Coonce. The former observed defendant and waved to him. Both minors had a conversation between themselves concerning marijuana. De Bere inquired of Coonce, "I wonder if that fellow out there (referring to defendant) has got any weed?" to which Coonce replied, "I don't know. Ask him." Thereupon, both minors went out to where defendant was working in front of the house. Coonce inquired of defendant, "Do you have a joint?" Defendant answered in the affirmative and handed Coonce a marijuana cigarette. Both boys thanked defendant and Coonce handed him 50 cents. Defendant stated he was hungry and the minors offered to fix him a lunch. Returning to the house Coonce obtained a sandwich which he took to defendant who then returned the 50 cents previously given him.

· The cigarette which the boys received was wrapped in brown paper with the ends tucked in. The boys smoked it, inhaling air into the lungs as far as they could, and then holding the smoke as long as they could. The smoking cigarette smelled like burning leaves or bark and made the throat dry. The boys became "high," and they left the house and walked around. De Bere felt as if he were "floating." He felt real "fast" and after a while he "slowed down." Everything was "pretty." He looked at people and talked. To Coonce, at first things seemed "funny," but a little while later he felt "serious." After a while both boys felt their sensations of hunger and thirst to be greatly stimulated, there was a marked difference in the pupils of their eyes, and they felt tired and sleepy.

·About 2 o'clock the minors returned from the walk and they started thinking about getting "high" again. Coonce went out to defendant and inquired if he "had any more." Defendant replied, "Yes, I will give you some roaches." He stated that he would put them in a roll and drop them. Coonce came

back to the house, informed De Bere, and then went to the front porch to wait to receive the "roaches." A "roach" is a partially smoked marijuana cigarette. Defendant dropped, on the ground, a matchbook containing two partially smoked marijuana cigarettes. This matchbook was recovered by Coonce who returned with it to De Bere inside the house. The latter had observed the transaction by looking out through the mailbox in the door. The two boys smoked the partially smoked marijuana cigarettes and received a similar reaction to the reaction they had received from the marijuana cigarette they had smoked earlier in the day, only they did not get quite as "high."

Officer Edwin O. Hall, Los Angeles Police Department, Narcotics Division, listened to the minors relate the events set forth above. It was his opinion that the substances which the boys had received and smoked were a narcotic, marijuana.

Sworn as a witness in his own behalf defendant denied commission of the crimes charged against him. He testified that on April 24, 1957 he was employed as a workman on a storm drain in the area here in question. He testified that while he had seen the minor De Bere prior to April 24, he never had any conversation with him. That he could not recall having seen the minor Coonce prior to the preliminary examination. That on the Monday before his arrest he had shouted at a group of boys who were pushing a car down the street to stop blocking the trucks; that one of the boys made a "smart" remark, and that Michael Coonce had been among this group. Defendant testified that on the morning of April 24, 1957 he had left work about 10:30 to go to the bank and had not returned until 12:30 in the afternoon; that he had not seen the boys and had no marijuana cigarettes in his possession.

Coleman Davis testified that on April 24, 1957, he was working about 300 feet from defendant; that he had never seen the latter talking to any boy on the street; and that defendant had left between 10 and 11 to go to the bank and had returned at 12:30.

On cross-examination, defendant admitted he had previously been convicted of the crime of possession of marijuana. When defendant was asked if he had stated to a police officer, "I was working there Wednesday, yes, I remember that kid giving me lunch Wednesday, but it was for nothing," he denied making any such statement. Officer Lang of the Los Angeles Police Department testified in rebuttal that defendant had made such a statement to him. On cross-examination Officer

Lang further testified that he had asked defendant if the day before the offense he (defendant) had had a conversation with the boys regarding smoking marijuana; that he had specifically asked defendant if he (defendant) had made the statement, "Look at those two bad boys blowing a joint"; that defendant had replied, "I don't think I made that statement, but I may have said something about 'blowing a joint' "; that defendant stated he had been "shucking" (kidding) when he made this remark; that defendant stated that the boy had given him a lunch for nothing, and that defendant stated he had never given anyone a marijuana cigarette or a partially smoked marijuana cigarette. Defendant, testifying on surrebuttal, denied making these statements to Officer Lang.

■ Appellant's sole contention on this appeal is that, "The evidence of the complaining witnesses are so highly inconsistent as to render their stories improbable and therefore, the evidence is insufficient to sustain the guilt of defendant beyond a reasonable doubt." In support of this claim, appellant asserts that the testimony is incredible in that it discloses that he had furnished marijuana gratuitously to the two minors whom he had never seen before. That it is inherently improbable that people who possess narcotics go around promiscuously giving it away to strangers. But, appellant overlooks the testimony in the record that the day before the transaction here in question he had a conversation with the minors concerning the use of marijuana. Also, that he considered himself sufficiently acquainted with one of the boys to greet him with a friendly wave of the hand when he saw the boy on the street. Thus, it would appear that appellant and the minors were not complete strangers on April 24, 1957. There is also evidence that the boys gave appellant 50 cents for the marijuana they received, which 50 cents appellant returned to the boys after he was furnished with a lunch. The evidence therefore, indicates that the alleged transaction was not entirely gratuitous on the part of appellant.

We are satisfied that appellant's contention cannot be sustained. ■ In the case of *People* v. *Lyons,* 47 Cal.2d 311, 319, 320 [303 P.2d 329], the court was confronted with a similar argument and in rejecting it said:

"Appellant next assails the testimony of the prosecuting witnesses as inherently improbable. This contention cannot be sustained. The rule is thus stated in *People* v. *Huston* (1943), 21 Cal.2d 690, 693 [134 P.2d 758];

" 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. (Citing case.) ▮ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.) ▮ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' "

Viewed in the light of the rule announced in the case just cited, it is manifest that the testimony of the two minor witnesses cannot reasonably be strictured as being inherently improbable.

As to appellant's argument that there were inconsistencies in the testimony of the two minors, as well as contradictions, it may well be said that it rarely happens that a case is presented on appeal in which some inconsistencies in the testimony of certain witnesses may not be discovered. ▮ As has often been said, reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. ▮ Undoubtedly, for this reason, our Constitution provides that the appellate courts are not authorized to review evidence, except where on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. In accord with the spirit and intent of the constitutional provision, the Legislature has ordained that the duly constituted triers of facts are the exclusive judges of the credibility of witnesses (Code Civ. Proc., § 1847), and are the judges of the effect and value of evidence addressed to them, except in those instances where it is declared by the law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). While the alleged variances or inconsistencies asserted to be apparent in the testimony of the two minors, and the contradictions referred to undoubtedly afforded opportunity for a persuasive argument to the trial judge against the reliability of their testimony, we see in them nothing from which a reviewing court could justly conclude that their entire testimony is

*per se* unbelievable, and that it was therefore the duty of the trial judge not only to wholly disregard it, but to accept the denial thereof by appellant and find that his guilt had not been disclosed by the evidence to a moral certainty and beyond a reasonable doubt.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.