[Crim. No. 2974. Third Dist. June 6, 1960.]

THE PEOPLE, Respondent, v. HAROLD C. MORANDA, Appellant.

 

William J. Hoog, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond Momboisse, Deputy Attorneys General, for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment of conviction following the jury's verdict finding him guilty of violating section 288 of the Penal Code.

The alleged act took place at the home of the prosecutrix on the evening of January 2, 1959. The defendant was a casual acquaintance of her parents with whom he and another acquaintance, referred to in the record only as "Scotty," had spent New Year's Day drinking wine. At the parents' suggestion defendant spent the night with them, occupying a sleeping bag on the floor. The prosecutrix, her 4-year-old brother and Scotty were all sleeping on a bed in the same room. The bed was against the wall and she occupied the wall side thereof. It was her testimony that some time during the night the defendant crept under the covers of the bed, fondled her, made immoral offers and suggested that she approach one of her friends so that he might achieve the same purpose with the friend. She further testified that the next day defendant followed her and her friend to a nearby schoolyard where he continued his advances. The children complained to the parents of the prosecutrix, and defendant was taken into custody. During his interrogation by sheriff's deputies he made a written statement by which he admitted that he had slept in the same room with the prosecutrix; that some time during the night she got out of bed and tripped over him where he was sleeping, at which time he fondled and hugged her.

It is defendant's first contention that his statement was the result of fraud. The evidence in this regard shows that following his arrest he was taken to the sheriff's office in Ukiah by Deputy Sheriff Carlstedt. On direct examination Carlstedt

testified that, together with other officers, he had a discussion with defendant about the case; that the defendant went into a small interrogation room where he personally wrote out a complete statement; that no threats were made, nor were any promises made; and that the statement was given freely and voluntarily. Thereafter the statement was admitted in evidence without objection. Upon cross-examination of Carlstedt by the defendant, the following colloquy ensued:

"Q. . . . Now, do you recall that at this time, he [Captain Stefani] was questioning me concerning this offense, that I had stated that it was a most shameful humiliating experience I had ever went through, that I felt ashamed to even face you or to look at any of those fellows upstairs, ashamed of something like that hanging over my head. Do you remember that? A. Yes. Q. And, I also stated at that time that I felt that a child of eight years old accusing me of such a crime that I couldn't understand a jury disbelieving a child and believing me, that I had a long record. Do you remember me stating that? A. Yes. Q. I also stated, if you recall, I believe, that I told you that I would rather go into court and plead guilty to a burglary or anything than to face the shame of going into a courtroom where there was a jury and having to sit there and humiliate me with something like that hanging over my head. Did I tell you that? A. You did.

"Q. At that time, Mr. Carlstedt, I believe that either you or Mr. Stefani told me that the charge was 270 of the Welfare and Institutions Code, which I was given to understand was a misdemeanor and not a felony. A. If I understand you right, Mr. Moranda, Mr. Stefani said 702 of the Welfare and Institutions Code. Q. Well, I was just recalling from memory. I don't know what it was, but I understood that the charge at that time, as it stood, that I was being charged was misdemeanor and not a felony, is that correct? A. Well, that's what Mr. Stefani said. Q. And, I take it I stated that I would rather go into court and to plead something like that and to get away where I didn't have to face people and to take the blame of that rather than go into a court and plead not guilty and have to face a bunch of people with a crime like that on my head. Didn't I say that? A. That's right.

Q. Mr. *Stefani,* now I believe that you have investigated this case pretty thoroughly, and did you notice the discrepancies in the statement that I gave and compare them with the statements of what constituted the offense? MR. PETERSEN: [Deputy District Attorney] Your Honor—— THE COURT: That

calls for a legal conclusion. The objection is sustained. The DEFENDANT: Well, your Honor —— The COURT: And, it's outside the scope of the direct examination. The DEFENDANT: I will withdraw the question. I have no more questions of this witness to ask. Mr. PETERSEN: That's all.

"The DEFENDANT: But, your Honor, I wish to offer an objection to the testimony of this officer to the receiving of the statement as evidence in this case on two grounds. First, I was misinformed as to the nature of the charge. I thought it was a misdemeanor. Secondly, that the statement on its face would show that it is contrary to the evidence that's been given up here. It's strictly what is known as a false confession and cannot be used as evidence in the case. The COURT: Well, your objections are a little bit late and have no merit. They are overruled." Thereupon the prosecution rested its case.

In view of the testimony quoted, there can be no question but that the defendant's statement was made for the reasons stated in his testimony; that is, that he would "rather . . . plead guilty to . . . anything" than go to trial on a not guilty plea to a violation of section 288 of the Penal Code, and that he signed the statement under the false impression that he was being charged with a violation of section 702 of the Welfare and Institutions Code, a misdemeanor, rather than the felony involved in section 288. The prejudicial error resulting from the admission of his statement (see *People* v. *Berve,* 51 Cal.2d 286 [332 P.2d 97]) was compounded by an instruction given at the request of the prosecution to the effect that a confession must be voluntary before it may be considered, but that an admission could be considered even though not voluntary. (CALJIC, 21-A.)

In *People* v. *Trout,* *(Cal.App.) 2 Cal.Rptr. 445, where an almost identical situation was presented, the court (citing *People* v. *Nagle,* 25 Cal.2d 216, 222-223 [153 P.2d 344]) noted that ". . . the necessity for determining the voluntary character of a statement does not depend upon whether it constituted a confession but upon whether it included an important incriminating fact." And since the statement of the defendant did include such important incriminating facts, the instruction was in error since it ". . . failed to inform the jury the same test would be applicable to such important

*A hearing was granted by the Supreme Court on March 23, 1960. The final opinion of that court is reported in 54 Cal.2d 576 [6 Cal.Rptr. 759, 354 P.2d 231].

incriminating statements as to a confession.'' Subsequent to the trial of this case the Supreme Court has had occasion to examine the same question, and noting that there has been considerable confusion as to the admissibility in a criminal proceeding of statements allegedly made by the defendant involuntarily, and that the distinction between confession and admissions is ''subtle and questionable,'' reapproved the rule in the Nagle case and then held:

''We have required preliminary proof of the voluntary character of statements that include 'an important incriminating fact.' (*People* v. *Nagle, supra*; see *People* v. *Eggers,* 30 Cal.2d 676, 689 [185 P.2d 1] ; *People* v. *Quan Gim Gow,* 23 Cal.App. 507, 512 [138 P. 918].) Limitation of the exclusionary rule to full confessions has been rejected not only by the foregoing opinions of this court (*People* v. *Eggers, supra; People* v. *Nagle, supra; People* v. *Gonzales, supra*), but also by the American Law Institute (Model Code of Evidence rule 505) and the National Conference of Commissioners on Uniform State Laws (Uniform Rule of Evidence 63 (6) ; see also 78 A.B.A. rep. 134). Moreover, the Supreme Court of the United States has held that the due process clause of the Fourteenth Amendment requires exclusion of coerced admissions if they are sufficiently damaging. (*Ashcraft* v. *Tennessee,* 327 U.S. 274 [66 S.Ct. 544, 90 L.Ed. 667] ; but *cf. Stein* v. *New York,* 346 U.S. 156, 162-163, footnote 5 [73 S.Ct. 1077, 97 L.Ed. 1522].)

 ''Involuntary confessions are excluded because they are untrustworthy, because it offends 'the community's sense of fair play and decency' to convict a defendant by evidence extorted from him, and because exclusion serves to discourage the use of physical brutality and other undue pressures in questioning those suspected of crime. (*People* v. *Berve,* 51 Cal.2d 286, 290, 293 [332 P.2d 97] ; see *Watts* v. *Indiana,* 338 U.S. 49, 54 [69 S.Ct. 1347, 1357, 93 L.Ed. 1801], *Lyons* v. *Oklahoma,* 322 U.S. 596, 605 [64 S.Ct. 1208, 88 L.Ed. 1481].) All these reasons for excluding involuntary confessions apply to involuntary admissions as well. (See *Opper* v. *United States,* 348 U.S. 84, 90-92 [75 S.Ct. 158, 99 L.Ed. 101] ; Falknor, *The Hearsay Rule and Its Exceptions,* 2 U.C.L.A. L. Rev. 43, 68.) Accordingly, any statement by an accused relative to the offense charged is inadmissible against him if made involuntarily.'' (*People* v. *Atchley,* 53 Cal.2d 160, 170 [340 P.2d 764].)

By reason of our conclusions as to the two contentions of

defendant heretofore discussed, it becomes unnecessary to review the additional questions raised.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied July 5, 1960, and respondent's petition for a hearing by the Supreme Court was denied August 3, 1960.