[Crim. No. 13083.   Second Dist., Div. One.   Feb. 21, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN E. McKISSACK, Defendant and Appellant.

Joseph C. Battaglia, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert H. O'Brien, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—An information charging defendant with one count of forgery. (Pen. Code, § 470) consolidated for trial with an information charging his brother Reece Ray McKissack with four counts of forgery, became count V of the consolidated information. A jury found defendant guilty of forgery as charged in count V; Reece Ray McKissack was found guilty on counts I, II, III and IV. Only defendant appeals from the judgment.

The charge against defendant (count V) involves Exhibit

5, a check drawn on First Western Bank and Trust Company of Alhambra, California, personalized for Laddercraft Company, dated October 29, 1965, payable to Torry A. Hatch in the sum of $169.88, bearing a signature of Edward H. Wurst as maker. In late October 1965 Edward H. Wurst, vice president of a manufacturing corporation, Laddercraft Company, missed some numbered checks from his place of business (Exhs. 1, 2, 3, 4, 5). On October 29, 1965, Exhibit 5 was presented to William L. Cunningham, Alpha Beta Acme Market in Alhambra; he gave cash in exchange for the check. The signature in the lower right-hand corner of the check was not that of Edward H. Wurst and he did not give anyone permission to sign his name to the check.

On November 18, 1965, defendant was arrested at his home in South Gate; he was advised of his constitutional rights, and when asked if he understood them he replied, "Yes." Informed of the charge and that checks had been passed in markets throughout San Gabriel Valley, defendant denied any connection with them. Asked if he would like to discuss it, defendant replied, "No." Passing three markets where checks were passed, on the way to the station, Sergeant Kliegl asked if he ever passed checks there; defendant replied that he had not and he had never been in the markets. He also denied ever doing business with Laddercraft or handling any of its checks. After being booked defendant was fingerprinted; neither defendant nor his brother Reece was allowed to touch any of the checks.

In the course of his investigation, Sergeant Kliegl had a conversation with David DePue; DePue admitted he had passed all checks bearing his name. He said that the two brothers gave him the checks and one's name was Reece. Shown mug shots of the McKissack brothers, DePue identified them as the two who had supplied him with the checks and driven them around when they passed the checks on Friday evening. Sergeant Kliegl also talked to Jerry Webster. He too identified the mug shots of the McKissack brothers as those who had supplied the checks and had been with them in the automobile at the time the checks were passed. DePue and Webster told him they had received approximately $300 apiece and that the McKissack brothers had taken around $1,400.

Jerry Webster testified that around the end of October 1965, he had "dealings" with defendant and his brother Reece relative to cashing certain checks; he signed and cashed

Exhibit 5 and also Exhibits 2 and 4, all of which defendant and Reece supplied him. He further testified that he signed "Edward H. Wurst" on Exhibit 2 which was made out to "Torry Hatch"; he had a duplicate driver's license in the name of Torry Hatch; defendant and Reece took him to a market in Alhambra where he and DePue went in and he cashed the check. As to Exhibit 4, Webster said that defendant and Reece also supplied this check made out to "Torry Hatch" and he wrote the name "Edward H. Wurst" as the maker; defendant and Reece drove him to a market where he and DePue entered and cashed the check; he wrote the endorsements on the reverse sides of Exhibits 2 and 4. Webster testified that Exhibit 5 was supplied to him by defendant and Reece; the check was made payable to "Torry A. Hatch"; he wrote the signature "Edward H. Wurst" and made the endorsement on the reverse side; defendant and Reece drove him to an Alhambra market; he and DePue entered and he cashed Exhibit 5. The money received by Webster from these checks was divided among him, DePue, Reece and defendant.

David DePue testified that in October of 1965, he received Exhibit 1 from one of the brothers; at the time, his name and the sum were filled in and it was already signed at the bottom; on the reverse side the name "David A. DePue" was written along with the address, 1134 Vista Avenue, Alhambra, which Webster signed in the car outside of the market prior to cashing the check; he, Webster, defendant and Reece were in the car; Webster signed four or five checks; he took Exhibit 1 into the market and cashed it by supplying a California driver's license. DePue further testified that Exhibit 3 was given to him by one of the McKissack brothers; the face of the check was filled in and on the reverse side was written, "David A. DePue" and the same address which Webster wrote at the suggestion of one of the McKissacks; after cashing Exhibit 3 he gave the money to the McKissack brothers; he cashed three checks and Webster cashed three; he got about $330 from the checks.

Sergeant Knowles rolled the fingerprints of defendant and Reece on the fingerprint exemplar cards. Reece's left thumbprint appears on one check; defendant's right thumbprint appears on Exhibit 5.

Defense witnesses testified that although defendant and his brother Reece were propositioned by Webster, who handed the checks to them for examination and to whom they immediately returned them, to participate in passing Exhibits 1

through 5, they refused; and that while the checks were being passed in the market defendant was at home with his wife.

In a lengthy factual argument wherein he asks this court to reject the testimony of DePue and Webster and accept the defense testimony, appellant claims that the evidence is insufficient to support his conviction because nothing connects him with passing the checks except the testimony of the "two convicted felons, both of whom were admitted liars."

Initially we note the well-established rule concerning the scope of review of an appellate court that only where there is no substantial evidence in the record to justify the conclusion reached by the trier of fact can a court of appeal reverse the judgment of conviction on the ground of insufficiency of the evidence. Thus, the function of this court is limited to ascertaining from the record whether there is any substantial evidence to support the verdict of the jury. (*People* v. *Fork*, 233 Cal.App.2d 725, 729 [43 Cal.Rptr. 804].)

Our review, moreover, is bound by the rule that insofar as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable in support of the judgment. (*People* v. *Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049].) The jury disbelieved defendant's witnesses and accepted the testimony of DePue and Webster as credible. It is also well settled that it is the function of the trier of fact to determine the credibility of witnesses, weigh the evidence and resolve all factual conflicts (*People* v. *Saterfield*, 65 Cal.2d 752, 759 [56 Cal. Rptr. 338, 423 P.2d 266]), and this court may not reweigh the evidence and reject the finding of the trier on credibility of the witnesses. (*People* v. *Crooker*, 47 Cal.2d 348, 352 [303 P.2d 753].) The conflict in the testimony was squarely placed before the jury whose finding was resolved against defendant's contentions, and is binding upon this court. (*People* v. *Mehaffey*, 32 Cal.2d 535, 548 [197 P.2d 12].)

Under section 470, Penal Code, "Either the forging or the uttering (making use) of the instrument is enough to sustain a conviction. [Citations.]" (*People* v. *Fork*, 233 Cal.App.2d 725, 730 [43 Cal.Rptr. 804].) "Forgery as defined by Penal Code section 470 does not require proof that defendant wrote the forged check. Its definition includes the passing of a check known to be forged with intent to defraud. (*People* v. *Chapman*, 156 Cal.App.2d 151 [319 P.2d 8].)" (*People* v. *Effman*, 212 Cal.App.2d 414, 415-416 [28 Cal.Rptr. 85]; *People* v. *Fork*, 233 Cal.App.2d 725, 731 [43 Cal.Rptr. 804].)

It need not be shown that defendant himself executed the false instrument if there is proof that he procured its execution or aided and abetted another in doing so. A conviction of forgery is sufficiently supported by evidence that one aids another in the passing of forged checks. (*People* v. *Buckley,* 202 Cal.App.2d 142, 149 [20 Cal.Rptr. 659] ; *People* v. *Jack,* 233 Cal.App.2d 446, 456 [43 Cal.Rptr. 566] ; see *People* v. *Clay,* 208 Cal.App.2d 773, 777 [25 Cal.Rptr. 464].)

The evidence establishes that before the check passing started defendant had discussions concerning the scheme with his brother Reece and Webster; the Laddercraft Company checks stolen from the corporation were supplied to DePue and Webster by defendant and Reece so that DePue and Webster could pass them; the signature of the maker on all of the checks was false; defendant and Reece obtained money (about $1,400) as the result of DePue and Webster passing the checks and one of defendant's fingerprints was found on Exhibit 5; Exhibit 5, dated October 29, 1965, payable to "Torry A. Hatch" for $169.88 and drawn on First Western Bank and Trust Company of Alhambra, California, personalized for Laddercraft Company, was supplied by defendant and Reece to Webster at which time defendant and Reece told him to sign the name of "Edward H. Wurst," vice president of Laddercraft, as the maker on the check, which he did in the car in defendant's presence; thereafter defendant and Reece drove Webster to Alpha Beta Acme Market, Alhambra, for the purpose of passing Exhibit 5; Webster went into the market and presented Exhibit 5 to William L. Cunningham who gave him cash in exchange for the check.

Finally, calling our attention to the fact that he was erroneously sentenced on counts I through IV when he was convicted only on count V, appellant submits that "the record should be amended to conform with the verdict handed down by the jury."

The record shows that information No. 314754 charged defendant with forging and passing Exhibit 5; for trial it was consolidated with information No. 314504 charging Reece Ray McKissack with four counts of forgery. The forgery charged against the defendant in information No. 314754 became count V of the consolidated information. As to Reece no problem exists for both the reporter's transcript and the clerk's transcript show that the jury found him guilty as charged in counts I, II, III and IV, and that on October 13, 1966, he was sentenced thereon. As to defendant, the report-

er's transcript and the clerk's transcript reflect the jury's verdict of guilt on count V. The reporter's transcript shows that on October 14, 1966, the trial judge sentenced him to the state prison on count V, but through an obvious clerical error the judgment recites that defendant was found guilty of forgery "as charged in each of the counts I, II, III and IV of the information" and orders that he be punished by imprisonment in the state prison for the term prescribed by law "on said counts." Thus, the judgment shows defendant to have been convicted on counts I, II, III and IV and sentenced on each count, while, in fact, he was convicted only on count V and sentenced on count V. ■■■ Where there is a conflict between the reporter's transcript and the clerk's transcript, and the question arises as to which of the two records is controlling, the answer shall be determined from a consideration of the circumstances under which the proceedings were had. (*People* v. *Washington,* 95 Cal.App.2d 454, 456 [213 P.2d 70].) ■■■ Controlling here, of course, is the reporter's transcript reflecting defendant's true status—that he was convicted on count V and sentenced thereon. Thus, the appropriate course is for this court to correct the judgment entered in the cause (*People* v. *Baca,* 247 Cal.App. 2d 487, 497, 499 [55 Cal.Rptr. 681]) by striking out the following in line 22, "each of the Counts 1, 2, 3 and 4" and substituting therefor the following, "Count V"; and striking out the following in line 24, "counts" and substituting therefor "count." As so corrected the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.