[Crim. No. 3398.   Third Dist.   May 29, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH PURCELL HUNT, Defendant and Appellant.

Joseph Purcell Hunt, in pro. per., and William H. Whittington, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and John L. Giordano, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—After a nonjury trial defendant was convicted of transportation of heroin in violation of section 11501, Health and Safety Code. He admitted three prior

narcotics convictions. He now appeals from the judgment. His attempted appeal from an order denying a motion for new trial is dismissed. (Pen. Code, § 1237.) Basic issue on appeal is defendant's contention that incriminating evidence was improperly admitted by the trial court, because secured by the officers as the result of an illegal arrest and search prompted by police information received from an undisclosed informant. Asserted denial of due process of law stems from the same alleged illegalities.

Robert Jensen was an agent in the Sacramento office of the State Bureau of Narcotic Enforcement. Agents Irvin and Cozzalio were his subordinates. Defendant was a known narcotics violator in the Sacramento area and was known to these officers. Jensen had knowledge of defendant's automobile, a cream-colored Cadillac. He had seen defendant in that car in Sacramento approximately June 4, 1962. Three days later, on June 7, Jensen instructed Agents Irvin and Cozzalio to proceed in separate cars to a stakeout point on U.S. Highway 99 at the intersection of Elk Grove Boulevard, some miles to the south of the city limit of Sacramento. Jensen had received information from a federal narcotics agent that defendant had purchased heroin in Los Angeles and would be returning to Sacramento the evening of June 7 with the heroin in his car. The federal agent had this information from a confidential informant. After receiving this information from the federal agent, Jensen made an independent investigation of the neighborhood frequented by defendant and confirmed his belief that defendant was out of town. He instructed Irvin and Cozzalio to intercept defendant. They did not arm themselves with an arrest warrant or search warrant.

Irvin and Cozzalio, driving separate vehicles, parked beneath an underpass and in proximity to the northbound lanes of U.S. Highway 99. At about 5:15 p.m. they observed a 1958 Cadillac driven by defendant. The car answered the description given to Irvin and Cozzalio by their superior, Jensen. The agents pulled out from their position beneath the underpass. The driver of the Cadillac immediately accelerated and the agents gave pursuit. At the intersection of Bond Road and U.S. Highway 99 the Cadillac turned east. For approximately one mile to the east of the highway, Bond Road is narrow and surfaced with "blacktop." It then becomes a rather heavily rutted dirt road which comes to an end at a levee. Irvin followed the Cadillac at speeds of 80 to 90 miles an hour on the blacktop portion of the road and at speeds of

65 or 70 miles an hour on the dirt portion. At these speeds he was not gaining on the Cadillac. The Cadillac came to a stop. There was considerable dust. By the time Irvin pulled to a stop defendant was standing behind his car in the proximity of the left rear fender, and the trunk lid of the Cadillac was open. Irvin placed defendant under arrest and waited for Cozzalio's arrival. When the latter arrived the two agents searched defendant's car. In the vertical portion of the trunk just above the bumper they found an envelope containing 34 bindles of whitish powder. Later analysis demonstrated that the powder was heroin.

While in custody defendant made a statement to a deputy district attorney in which he admitted that he had gone to Los Angeles for the purpose of picking up a shipment of heroin. He admitted that the heroin found in his car belonged to him and that he was transporting it to Sacramento. Defendant had a passenger in the car who, defendant testified, had no knowledge of the heroin.

█ If defendant's arrest and the ensuing search of his automobile were illegal for lack of reasonable cause, the heroin which was the physical product of the search was not competent evidence. (*People* v. *Mickelson,* 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], and cases cited at p. 450.)

█ Defendant's theory rests essentially on *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39], which established the rule that a communication from a confidential informer to the police may not be utilized to establish reasonable cause for an arrest and search unless identity of the informer is revealed at the defendant's demand. In the court below defendant laid an adequate foundation by timely inquiry into the informer's identity and by timely objections to evidence. He points out that Irvin and Cozzalio, the arresting officers, justified the arrest and search by information they received from Jensen, their superior officer, who in turn relied on a communication from a federal narcotics agent, who in his turn had received his information from the undisclosed informant. He contends that existence of intervening steps in the chain of communication from the informer to the arresting officer cannot block demands for revelation of the informer's identity, citing *People* v. *Harvey,* 156 Cal.App.2d 516, 523 [319 P.2d 689].

However valid as an abstract proposition, the argument does not govern this case. █ The rule requiring disclosure of an informer's identity has no application in situations

where reasonable cause for arrest and search exists aside from the informer's communication. (*People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19]; *Priestly* v. *Superior Court, supra,* 50 Cal.2d 812, 816-817; *People* v. *Dickenson,* 210 Cal.App.2d 127, 135, 136 [26 Cal.Rptr. 601]; *People* v. *McMurray,* 171 Cal.App.2d 178, 183 [340 P.2d 335].)     Irvin and Cozzalio had reasonable cause to arrest defendant and search his automobile if there existed "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. . . . [Probable cause] is not limited to evidence that would be admissible at the trial on the issue of guilt." (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den. 364 U.S. 841 [81 S.Ct. 79, 5 L.Ed.2d 65].)

     Quite aside from any information indirectly emanating from the anonymous informant, Irvin and Cozzalio were aware of the following facts at the time of the arrest and search: (1) Hunt was a known narcotics offender; (2) when his automobile passed the officers he immediately accelerated and drove off the highway, down a side road, at high speed; and (3) in the brief time before Irvin could stop, Hunt had hastily exited from his car and opened the trunk. Under the circumstances, a person of "ordinary care and prudence" would be thoroughly justified in entertaining an "honest and strong suspicion" that this known user or carrier of contraband had attempted to flee as soon as he recognized the stakeout; had been interrupted in the hurried act of getting something out of the trunk of his car and that this "something" might be contraband of the same sort which had caused defendant's previous brushes with the law.

Doubtless, Irvin and Cozzalio would not have been at the stakeout point had it not been for the communication emanating indirectly from the anonymous informant. The latter, however, had merely set wheels into motion. Since reasonable cause existed apart from his message, disclosure of his identity could not assist the defense in demonstrating lack of it. (See *People* v. *McShann,* 50 Cal.2d 802, 809 [330 P.2d 33].) Doubtless, too, the officers would have tried to stop Hunt had he not attempted to flee, such being their instructions. We are not, however, inquiring into reasonable cause in the absence of attempted flight. His flight was a palpable fact. We know also that Jensen, the supervising agent, made an independent investigation which confirmed Hunt's absence from Sacra-

mento. Such an investigation, although prompted by a message from an anonymous informer, may itself play a role in the formulation of reasonable cause. (*Priestly* v. *Superior Court, supra,* 50 Cal.2d at p. 818.) Here, the independent investigation revealed nothing except defendant's absence from Sacramento, not in itself a suspicious fact. On the assumption that nondisclosure of the informant's identity requires us to set to one side these circumstances, which were components in the sum total of the officers' awareness at the time of the arrest, nevertheless the remaining facts are sufficient to produce reasonable cause. (*People* v. *Fischer,* 49 Cal.2d 442, 446 [317 P.2d 967].) The process involves a retrospective evaluation by the objective standard of the "man of ordinary care and prudence." After the (assumedly) impermissible knowledge is segregated from permissible knowledge, it is impossible to say that the officers did not have reasonable cause to arrest defendant and search his car for narcotics.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1963. Peters, J., was of the opinion that the petition should be granted.