[Crim. No. 9676. In Bank. Feb. 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SERGIO PEREZ, Defendant and Appellant.

Reginald D. Armstrong, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Leslie F. Bell and James H. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

BURKE, J.—Sergio Perez was found guilty by a jury of rape (Pen. Code, § 261, subd. 4)[1] and first degree burglary (Pen. Code, § 459). A motion for a new trial was denied, and he was sentenced to prison for the burglary.[2] He has appealed, contending that the prosecutrix's testimony is inherently improbable and that evidence inadmissible under *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], requires reversal of the judgment. We have concluded that neither contention can be upheld.

Mrs. Dorothy Holder, the complaining witness, testified to the following effect: About 3 a.m. on January 6, 1964, she was sewing in the living room of her home on Millbury Avenue in La Puente. Her four children, ranging in age from 7 to 11, were asleep in their bedrooms, and her husband, a truck-driver, was away on a trip. She put on the dress she was sewing and went into a bedroom to look in the mirror. As she turned around, she saw defendant, a man she had never seen before, standing behind the door. She let out a loud yell, and defendant told her to stop screaming. He stated that he had a knife in his pocket, but she did not see it. In response to

---

[1]Penal Code section 261 provides: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances: . . .

"4. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, . . ."

[2]The trial court determined that both offenses were part of one indivisible transaction and did not impose a sentence for the rape.

questions by defendant she said that her husband was asleep on the other side of the house. After defendant pushed her onto the bed she told him she heard a noise, and he went over to the door to investigate. At this time she thought of trying to escape through the window but was afraid her children would wake up and did not want them to see "it." Defendant then had sexual intercourse with her, to which she submitted out of fear for her own safety and that of her children. Afterwards he said, "I know . . . you're going to call the cops." She promised not to do so if he would not return, and he said, "Don't, because I'll come back and get you, because I can get sent up for this." He then left through a window.

Mrs. Holder further testified that the next morning around 7 she was awakened by the doorbell and found defendant at the door, but when she ordered him to leave he did so, and she watched him drive away in a car. After her children left for school she went to a neighbor's house and told her what had happened. The neighbor testified that Mrs. Holder was "very white" and "very emotionally upset." They went to buy shells for a rifle that Mrs. Holder had at her home. That night she was again awakened by the doorbell. She looked out the window, saw defendant's car, and called the sheriff's office. An officer testified that when he answered the call Mrs. Holder opened the door with a rifle in her hand and that the door had been barricaded with a chest. Defendant was apprehended several blocks from Mrs. Holder's home and was placed under arrest. At the scene of the arrest and subsequently at the sheriff's station he made statements, which will be discussed later herein.

Defendant took the stand in his own defense and testified as follows: He first met Mrs. Holder at a bar shortly after midnight on a Saturday or Sunday during the first part of December 1963. He was at the bar by himself and did not know the bartender or any of the patrons. Mrs. Holder was also alone, and he bought her a few whiskey sours. He offered to drive her home, and en route they parked and had sexual intercourse in the car. He told her about his wife, and she said that she was also married but that her husband was away. She invited defendant to her house, and at her home they again had sexual intercourse. She gave him her telephone number, and on January 6, 1964 (the date of the alleged rape), he telephoned her and asked if he could come to her home, and she replied that he could. He drove to her house, and she voluntarily had sexual intercourse with him. After-

wards she asked if they were going to see each other again, and he told her he did not think that it was a good idea because he did not want to get caught. She got mad, and he left. He returned to the house that morning about 7 because he had lost his money and thought it had fallen on the bedroom floor. Mrs. Holder slammed the door in his face. About 3 a.m. the next morning he telephoned her and asked if she had found the money, and she replied that she had but for him not to bother her. He then drove to her house in an attempt to get his money.

In rebuttal, Mr. Holder, the husband of the prosecutrix, testified that he had been home with his wife each Saturday and Sunday night during December 1963 and had not seen defendant at their home. Mr. Holder and his wife also testified that she never drank alcoholic beverages because she had a bleeding ulcer.

■ In urging that Mrs. Holder's testimony is inherently improbable, defendant points to evidence such as her testimony that she never saw the knife, did not attempt to escape, and did not complain to the police until the third time defendant came to her home. However, these matters do not show that her testimony is inherently improbable. ■ The applicable rule has been thus stated, " 'Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. [Citation.] To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (Citing cases.) ■ Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]' " (*People* v. *Lyons*, 47 Cal.2d 311, 319-320 [303 P.2d 329]; *People* v. *White*, 43 Cal.2d 740, 747-748 [278 P.2d 9].)

*People* v. *Carvalho*, 112 Cal.App.2d 482 [246 P.2d 950], relied upon by defendant, is unlike the instant case. There a jury found the defendant guilty of kidnaping his estranged wife, and on appeal the court concluded that the testimony of the prosecutrix was "fantastic" and the circumstances testified to by her were more than unusual. It appeared, among

other things, that the prosecutrix had abundant opportunity to escape and to inform others of her claimed predicament but made no effort to do so, that on the occasion of the asserted kidnaping she and the defendant began "making love" and had sexual intercourse, that she did not discuss the alleged crime with the police until a month later, and that on one occasion after the asserted crime the defendant came to her house for dinner.

The prosecution introduced evidence of statements by defendant to officers (1) at the scene of his arrest and (2) at the sheriff's station. [See fn. 3] Defendant contends that the latter statements were inadmissible under *Escobedo* v. *Illinois, supra,* 378 U.S. 478.[3] He makes no such contention with respect to the former; however, as will develop, both must be considered.

With respect to the statements at the scene of defendant's arrest the record discloses the following:

At 4:14 a.m. on January 7, 1964, Officer Johnson received a "prowler call," and he and Officer Lewis thereupon went to Mrs. Holder's home. She made a "complaint [to them] of a sexual nature," described the offender as a male of Mexican descent and heavy build, and stated that he had just left when the officers arrived. Before they finished getting a complete report from her they received a request from Officer Schwager for assistance with respect to a "possible suspect." Schwager, who had been driving towards Mrs. Holder's home in response to the call, had observed defendant driving on Millbury Avenue about one block from Mrs. Holder's home, had seen no other vehicles operating on the street, and after following defendant for several blocks had stopped him.

When Johnson and Lewis joined Schwager a conversation was held with defendant that lasted from 5 to 15 minutes. Schwager asked defendant "what he was doing on the street where he was coming from." According to the officers, defendant said that he "dropped" a friend off on Millbury Avenue, and, when asked if he knew the address, he replied that he did not. In response to other questions defendant said

---

[3]The trial in the instant case began before the decisions were rendered in *Escobedo* v. *Illinois, supra,* 378 U.S. 478, and *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The rules in *Escobedo* but not those in *Miranda* are applicable here. (*People* v. *Rollins, ante,* p. 681 [56 Cal.Rptr. 293, 423 P.2d 221].) The absence of an objection at the trial does not preclude reviewing on appeal the admissibility of the evidence under *Escobedo* since the verdict was before that decision. (*People* v. *Hillery,* 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382].)

that the friend had a girl friend who lived there, that defendant did not know where she lived or her name or where his friend lived, and that he helped his friend push his friend's car. Defendant was also asked if he knew anybody on the street and if he had been on the street before, and he answered "No" to both questions. Johnson testified that defendant was placed under arrest "at this time." The officers returned to Mrs. Holder's home and got "a report on this incident" from her and then took defendant to the sheriff's station.

At the trial defendant admitted having made some of the statements, such as that he had been "pushing a friend down the street" and did not know anybody on Millbury Avenue, and testified that the statements were untrue. He further testified as follows: When he was stopped by Schwager the officer told him to get out of the car and put his hands on the hood. He thought Schwager drew a gun on him. He asked what was wrong, and Schwager said, "You know what's wrong." After the other officers arrived defendant was "patted down." Then the officers started questioning him. They were "hollering and screaming about burglary" and were "pushing [him] around," and he became frightened. One of them said "something about 'You're trying to be a burglar or something.'" After "that" (apparently the conversation) was over he was placed under arrest.

■ A defendant's statements cannot properly be introduced into evidence where (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed the defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights. (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490-491; *People* v. *Dorado,* 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361].)

■ Here it is apparent that at the scene of his arrest the officers were engaging in normal investigatory questioning and were not carrying out "a process of interrogations that lent itself to eliciting incriminating statements." (Cf. *People* v. *Cotter,* 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862].) ■ The test in determining whether this requirement of the *Dorado* rule is fulfilled is an objective one, turn-

ing upon an analysis of "the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances." (*People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].) ▮▮▮ From the circumstances previously set forth it appears that the purpose of the police in questioning defendant at the scene of his arrest was not to obtain incriminating statements but to give him an opportunity to explain his presence on the street near Mrs. Holder's home.

The circumstances of the instant case are similar to those in *United States* v. *Konigsberg,* 336 F.2d 844. There the defendants were apprehended in a garage containing stolen goods. They were taken to an office of the Federal Bureau of Investigation, and at the office agents asked Konigsberg " 'why he was in this garage and just what had taken place . . . and . . . if he wished to cleanse himself or explain . . . what his reasons for being there were, why the other individuals were there.' " Konigsberg then made some incriminating statements. The court concluded that the purpose of the interrogation was not to elicit a confession, that the "uncontradicted purpose of the discussion was to give Konigsberg a chance to explain his presence in the garage if he could; to hear Konigsberg's side of the story. . . . If Konigsberg or any of the other people caught in the garage could account for their presence this was their opportunity." (*Id.* at p. 853; see also *People* v. *Cully,* 236 Cal.App.2d 769, 771 et seq. [46 Cal.Rptr. 644] [pet. for hearing denied]; *People* v. *Ford,* 234 Cal. App.2d 480, 486 et seq. [44 Cal.Rptr. 556] [pet. for hearing denied]; *People* v. *Fork,* 233 Cal.App.2d 725, 733 et seq. [43 Cal.Rptr. 804] [pet. for hearing denied].)

Defendant's statements at the scene of his arrest thus were not inadmissible under the rule in *Escobedo* and *Dorado*.

After his arrest defendant was taken to the sheriff's station, and later that morning Officers Stanfield and Gonzalez talked with him in the interrogation room for about one hour. The officers asked him "why he had broken into the house" and "why he had committed rape." He stated that he had never been to the house and did not know the victim, and for 15 minutes or more he continued to make such statements. Stanfield then said that "That was the worst defense he could have" and that "if he wanted to make up a story, the best story to make up would be that he knew the gal and he'd

been having sexual intercourse with her all along, and knew she was mad at him and trying to get even.''[4] Stanfield asked defendant for his statement again, and this time defendant said he had "picked [Mrs. Holder] up" in a bar two or three weeks before, that they had thereafter been engaging in acts of sexual intercourse, and that he had always gone to her house early in the morning so that the neighbors would not know of his presence.

When he made the statements at the station the accusatory stage had been reached. He was under arrest and from the circumstances it appears that the officers were then engaged in ''a process of interrogations that lent itself to eliciting incriminating statements.'' No attorney for defendant was present at the interrogation, and since it does not appear that defendant had been advised of his rights to counsel and to remain silent before he made the statements or that he had otherwise waived those rights, we must conclude that his statements at the station should have been excluded. (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490-491; *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354.)

Although it was error to admit the evidence of defendant's statements at the station, the error did not result in a miscarriage of justice. (Cal. Const., art. VI, § 13 ; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]; *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 [11 L.Ed.2d 171, 84 S.Ct. 229].) His statements did not constitute a confession but rather were attempted exculpatory statements. They were inconsistent with his testimony at the trial and some of them were admittedly false. They thus served both to impeach his testimony and to show a consciousness of guilt. However, his statements at the scene of his arrest served the same purposes.

The judgment is affirmed.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

PETERS, J.—I dissent.

The majority opinion concedes that the statements taken at

---

[4]Defendant asserts that this statement by Stanfield constituted hearsay. However, a statement not offered to prove the truth of the matter asserted is, of course, not hearsay (*People* v. *Marsh,* 58 Cal.2d 732, 737 et seq. [26 Cal.Rptr. 300, 376 P.2d 300]; *People* v. *Dalton,* 172 Cal.App.2d 15, 19 [341 P.2d 793]) and here the evidence clearly was not offered for that purpose. Moreover, no objection at the trial was made to the evidence.

the station house from defendant were secured in violation of the rules announced in *Escobedo* v. *Illinois*, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and that the rules of those cases apply to this appeal. It is admitted that it was therefore error to introduce those statements. But then it is held that the statements were attempted exculpatory statements and their introduction was not prejudicial error. With this conclusion I cannot agree.

This is not a case where the evidence of guilt is overwhelming. The testimony of the prosecuting witness, while it may not be inherently improbable, was subject to doubt. Defendant took the stand and testified to a story, which, if true, exonerated him. It is not an inherently improbable story. The case turned almost entirely on the credibility of the prosecutrix and of defendant. The improperly admitted statements completely shattered defendant's defense as testified to by him. It demonstrated that he had denied the crime until Officer Stanfield, at the improper interrogation, suggested the very story defendant then told and repeated on the witness stand. Nothing said at the properly admitted interrogation at the time of his arrest related to this problem. The improper introduction of the statements taken at the station house was devastating and shattering to defendant's defense. It completely destroyed the credibility of defendant's story. To hold that it is not reasonably "probable" (*People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243]) or reasonably "possible" (*Fahy* v. *Connecticut*, 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229]) that such error was prejudicial is to close one's eyes to reality.

I would hold that the admission of the statements at the station house was error and such error was prejudicial, and for this reason I would reverse the judgment.