[Crim. No. 13532.   Second Dist., Div. One.   Feb. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES WRIGHT, Defendant and Appellant.

Raymond A. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Jerold A. Prod, Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—Charged with two counts of assault with intent to commit murder (§ 217, Pen. Code) and one count of burglary (§ 459, Pen. Code), defendant was convicted by a jury of two counts of assault with a deadly weapon (§ 245, Pen. Code), a lesser included offense, and first degree burglary. He appeals from the judgment.

In the morning of March 25, 1966, defendant went to the residence of his divorced wife Jessie and told her he wanted $300; she said she would give him the money and call him that evening. About 10:45 p.m. she telephoned defendant saying she could not give him the $300 because she was paying bills; defendant replied, "I'm going to kill your black ass," then hung up. Five minutes later Jessie's doorbell rang; she looked out of the window and saw defendant; she took a gun from her sister, Mrs. Zollicoffer, and picked up the phone, went into the bedroom, dialed the operator and asked for the police but before she could be connected defendant forced the door. He stood with a gun pointed directly at her and fired six times without saying anything to or striking her. Jessie fired six shots in defendant's general direction. Defendant then knocked out Mrs. Zollicoffer by hitting her over the head with the gun. After that he beat Jessie with the gun crushing her skull and breaking a rib and her hand; while beating her he told her, "I wish I had some more bullets."

Upon receipt of information over the police radio that there was a disturbance, Deputy Franzlick went to Jessie's residence. He saw Mrs. Zollicoffer on the sidewalk; she had a bump on the head and blood about her face and appeared to be injured; she told him her sister was injured. Inside the apartment Jessie was covered with blood, appeared to be injured, and told him, "He beat me," pointing to the bedroom. The deputy looked into the bedroom from the front room and saw defendant lying across the bed on his stomach face down, holding a cloth to his neck; he asked him "what happened," and defendant said he had been shot by his wife. The deputy then went into the bedroom; again he asked defendant "to tell [him] what happened." Defendant said he had come to try to get $300, rang the doorbell and no one answered; he kicked the door in, drew a gun and then just started firing.

For the defense Harold Green testified that he heard defendant's conversation with Jessie, and defendant made no threat to kill her; defendant stayed in the house a few minutes after the call and laughed and played around with people

there; and he never saw a pistol in defendant's suitcase. Defendant testified that Jessie agreed to give him $300; that night she called at 11 o'clock and told him to come over and pick up the money; when he got there he knocked and someone said to come in so he went into the bedroom where he saw his wife with a gun in her hand; before he could say anything his wife shot him, then her sister got the gun and started shooting; he grabbed it and threw it at her, then returned to the bedroom and talked to his wife; he hit her two or three times with his fist but did not have a gun. He told the officer he was shot and was unarmed.

Appellant contends that the trial court erred in admitting his statement in evidence because when he made it to the officer he had not then been advised of his constitutional rights under *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and the prosecution failed to show that he was not then accused. At the outset it should be noted that in the trial court defendant interposed no objection to the admissibility of the statement.

█ A defendant's confession is not admissible if "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." (*People* v. *Dorado*, 62 Cal. 2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361].) █ Absent here is any suggestion that defendant was given his constitutional rights under *Dorado* or that he was advised under *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] that if he did not have funds with which to retain counsel one would be provided for him. Even so defendant's statement is admissible having been made at a time when the accusatory stage had not been reached and defendant was not in custody, and not in response to a process of interrogations that lent itself to eliciting incriminating statements.

The deputy had gone to the premises to investigate a disturbance, the nature of which he did not know. When he arrived at the scene he was confronted with three wounded persons—Jessie, her sister and defendant. The women were

covered with blood and appeared to be seriously injured; blood was on the floor of the living room and defendant, also injured, was face down on the bed holding a cloth to his neck. The deputy had no way of knowing what had occurred, and Jessie and defendant each accused the other of responsibility for the incident. It was his duty as an officer to investigage, and he started his investigation, a general inquiry, with the routine question, "what happened." At this time defendant was not under arrest; there is not the slightest evidence in the record that he was in custody or deprived of his freedom of action. At this point the deputy was accusing no one; nor was he, through his single inquiry, "what happened," carrying out a process of interrogations in an attempt to elicit incriminating statements from defendant. The sole purpose of his question was to find out what had occurred; it is a justifiable type of routine inquiry designed to determine what actually happened, as a means of commencing an investigation. (*People* v. *Jacobson,* 63 Cal.2d 319, 328 [46 Cal.Rptr. 515, 405 P.2d 555]; *People* v. *Cotter,* 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862].) In *People* v. *Cotter,* the officers knew that Mrs. Buus had been critically injured in her home and, after talking to Mr. Buus, searched out defendant and found him. On the way to the station one of the officers asked defendant what had occurred at the Buus residence; his response was incriminating. Said the court at page 393: "Clearly, the statement made in the police car was not the product of a process of interrogation aimed at eliciting incriminating statements from defendant. The police merely asked him what had happened at the Buus residence. They were affording him an opportunity which police officers normally and routinely offer to any person whom they are taking into custody to give any explanation of his conduct which he may desire to give. It is a routine means of commencing an investigation."

Without defendant's incriminating statement the overwhelming evidence of guilt supports his conviction of assaulting Jessie and her sister with a deadly weapon, and first degree burglary. Over the telephone defendant threatened to kill Jessie; only a few minutes later he rang Jessie's doorbell. Fearing defendant, she tried to reach the police but before she could do so he broke into the premises by forcing the door, pointed a gun directly at her and fired six times. Then he deliberately knocked out Mrs. Zollicoffer by hitting her over the head with the butt of the gun, and beat Jessie crushing her skull with the gun and breaking one of her ribs

and a hand, telling her he wished he had more bullets. While no proof of specific intent to commit an assault with a deadly weapon is necessary to support a conviction therefor (*People* v. *Corlett,* 67 Cal.App.2d 33, 55 [153 P.2d 595, 964]), the evidence here establishes that defendant wanted, and tried, to kill Jessie and injure her sister. If a firearm is deliberately and unlawfully fired toward another person in a manner likely to produce great bodily injury the offense of assault with a deadly weapon is complete. (*People* v. *Ingram,* 91 Cal.App.2d 912, 914 [206 P.2d 36].)

Appellant points out several discrepancies in the testimony of Jessie and Mrs. Zollicoffer to show that the witnesses should not have been believed. It is not our function to reweigh the evidence, resolve conflicts or reappraise the credibility of witnesses. (*People* v. *De Paula,* 43 Cal.2d 643, 649 [276 P.2d 600]; *People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353].) ''Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'' (*People* v. *Lyons,* 47 Cal.2d 311, 320 [303 P.2d 329]; *People* v. *Perez,* 65 Cal.2d 709, 712 [56 Cal.Rptr. 312, 423 P.2d 240]; *People* v. *White,* 43 Cal.2d 740, 747-748 [278 P.2d 9].) Any incompatibility or discrepancies in the testimony of the sisters were considered by the jury; its finding was resolved to give credence to their testimony, and it is binding upon this court. (*People* v. *Crooker,* 47 Cal.2d 348, 352 [303 P.2d 753]; *People* v. *Mehaffey,* 32 Cal.2d 535, 548 [197 P.2d 12].)

Finally, appellant claims that an improper investigation by the police prejudiced him; that the police failed to take the fingerprints on the .32 caliber pistol which would have verified his statement that the gun was used by Jessie's sister to shoot him, and took no photographs of the bullet holes made by the pistol or of the door to show that it had been forced. ''There is no compulsion on the prosecution to call any particular witness or to make any particular tests so long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial. (*People* v. *Larrios,* 220 Cal. 236, 251 [30 P.2d 404]; *People* v. *Simpson,* 66 Cal.App.2d 319, 329 [152 P.2d 339].)'' (*People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16]; *People* v. *Kiihoa,* 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) *Tuthill* involved the failure of the police to take the fingerprints on

the gun barrel and a paraffin test of defendant's hands and determine whether there were powder marks on the victim's head. The court held that defendant was not prejudiced by the failure of the police to make these tests. ▪ On the narrow issue of whether the lack of fingerprints and photos resulted in a denial of due process, there is absent any showing that the prosecution deliberately withheld or suppressed any material evidence. (*People* v. *Kiihoa,* 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) The police found three eyewitnesses—Jessie, her sister and a cousin, Mrs. Mallett—who identified defendant as the person who broke into the premises and committed the assaults with a loaded gun. With this evidence there was no reason for the officers to take the fingerprints on the gun or photographs of the door and the bullet holes. This does not show intentional suppression of evidence; and the failure of the prosecution to present such evidence is but a circumstance which the jury could take into consideration in determining the sufficiency of the evidence. (*People* v. *Honable,* 229 Cal.App.2d 480, 483 [40 Cal.Rptr. 414].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1968.