[Crim. No. 11360.   In Bank.   May 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LEE Z. JOHNSON, Defendant and Appellant.

Morton Herbert, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Lawrence Mindell and Marvin A. Bauer, Deputy Attorneys General, for Plaintiff and Respondent.

PETERS, J.—Defendant was found guilty of possession of heroin in violation of section 11500 of the Health and Safety Code. After denying a motion for new trial on August 26, 1963, the trial judge adjourned the proceedings, and directed that a petition be filed to determine whether defendant was addicted to the use of narcotics or in imminent danger of becoming so addicted. Defendant was committed as a narcotic addict and thereafter, on May 4, 1966, was returned for completion of the criminal proceedings. On May 19, 1966, he was sentenced to the state prison for the term prescribed by law. He appeals from the judgment of May 19.

The testimony of Los Angeles Police Officers Miers and Ladner may be summarized as follows: On the night of May 27, 1963, a ''reliable informant'' told them that one Curtis Cooper was selling heroin in his room at a named hotel. That night the officers went to the hotel to talk to Cooper, who had previously admitted being ''a user'' to Miers. As the officers approached, Cooper came out of his room and walked down the hall towards them. They stopped Cooper in the hallway and questioned him as to possible sales of heroin. Officer Miers

made a search of Cooper and found that he was carrying approximately $100 in small bills. No heroin was found on Cooper. He then asked Cooper if he could search his room, and Cooper said he could and gave the officer the key to the room. The officers went to the hotel room. Officer Miers inserted the key into the lock and was attempting to open the door, when it was opened by defendant. On seeing the officers, defendant appeared surprised, backed away, turned his back to the officers, bowed his head, and put his hand toward his face. Officer Miers asked him to turn around and open his mouth, and, when defendant did so, the officer saw a balloon in defendant's mouth. The officer told defendant to spit it out, and he did so. The balloon contained a powder which later proved to be heroin. The officers did not have a warrant to arrest or search defendant or Cooper.

Defendant testified that shortly after Cooper left the hotel room, he heard a key in the door, that he "figured" that Cooper was trying to get back in, that when he opened the door he saw Officer Miers, that he turned away from the officer who told him to open his mouth, and that the officer then pulled the balloon out of his mouth.

After the prosecuting attorney had asked Officer Miers several questions on redirect relating to the issue of probable cause for the search of defendant, defense counsel on recross-examination asked the name of the informant. The officer stated that he did not wish to reveal that person's name because it might endanger his life. The prosecuting attorney then stated that the name must be revealed only if the information received from the informer is the sole basis of probable cause, that if there is some other basis for probable cause the name need not be revealed, and that the prosecution was relying on the consent to enter the room and the observations of the officers after the door was opened.

Subsequently, defense counsel stated that he did not know if the consent was "involuntary or otherwise. There have been recent cases which the Supreme Court, on the question of whether consent is really free, and of the recent *Haven* case in which the—". The trial court then asked: "You have no basis to attack the consent in this case?" And defense counsel replied: "Except the entire situation is one that doesn't, in my estimation, ring really completely true, whether this is consent by Cooper or simply a submission, and the same thing is true when they get into the room. I think it

is an entire picture that can't be—the officers went there. The information from the informant is no longer able to be considered, because of the officers not revealing the identity. The act of the defendant in the room—''

██ It is settled that when the question of the legality of an arrest or search and seizure is raised at trial, the defendant makes a prima facie case when he establishes that an arrest was made without a warrant or that private premises were entered or a search made without a warrant, and the burden then rests on the prosecution to show proper justification. (*Tompkins* v. *Superior Court,* 59 Cal.2d 65, 67 [27 Cal. Rptr. 889, 378 P.2d 113] ; *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) ██ When the People seek to justify a search on the ground that consent was given, they have the burden of proving that a lawful consent was given. (*People* v. *Gorg,* 45 Cal.2d 776, 782-783 [291 P.2d 469].)

██ If the prosecution is to rely upon a consent to enter a hotel room, it has the burden of establishing that the consent was lawful, was not a mere submission to authority, and was not inextricably bound up with unlawful conduct. (Cf. *People* v. *Henry,* 65 Cal.2d 842, 845-846 [56 Cal.Rptr. 485, 423 P.2d 557].)

''A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom.'' (*People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927] [disapproving cases containing contrary implications] ; *People* v. *Henry, supra,* 65 Cal.2d 842, 846.) ██ *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], itself established that the fruits of an unlawful search were inadmissible, and we are satisfied that a search or entry made pursuant to consent immediately following an illegal search, involving an improper assertion of authority, is inextricably bound up with the illegal conduct and cannot be segregated therefrom. (Cf. *Wong Sun* v. *United States,* 371 U.S. 471, 485-486 [9 L.Ed.2d 441, 453-454, 83 S.Ct. 407] ; *People* v. *Bilderbach,* 62 Cal.2d 757, 764 [44 Cal.Rptr. 313, 401 P.2d 921] ; *People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557].)

██ Accordingly, if on the record before us we must conclude that the search of Cooper was unlawful, his consent to the entry of his hotel room is invalid, and the evidence secured by the prosecution as the fruit of that consent is inadmissible.

Under the record before us, the search of Cooper was unlawful. The information obtained from the informant may not be used to furnish probable cause for his arrest and search. ■ At the time of trial in the instant case in 1963, the rule was that information received from an informer may not be considered on the issue of probable cause where the prosecution refuses to identify him, and where the defense shows that it is relying upon the failure to identify the informer as making the search illegal. (*Coy* v. *Superior Court,* 51 Cal.2d 471, 473 [334 P.2d 569] ; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 819 [330 P.2d 39].)

■ Although an exception to the rule of *Coy* and *Priestly* was created subsequent to the trial, the exception does not justify consideration of the information of the informer in the instant case on the issue of probable cause. In *McCray* v. *Illinois* (1967) 386 U.S. 300, 305 [18 L.Ed.2d 62, 68, 87 S.Ct. 1056], the Supreme Court of the United States in a five-to-four decision held that when ''the issue is . . . probable cause for an arrest or search . . . police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant.'' The court pointed out that the officers there had related prior occasions when the informer had given information resulting in convictions, including the names of the persons convicted, and the court distinguished *Beck* v. *Ohio,* 379 U.S. 89 [13 L.Ed.2d 142, 85 S.Ct. 223] on the ground that each of the officers in *McCray* described ''with specificity'' what the informer actually said and why the officer believed the information credible, the '' 'underlying circumstances from which the officer concluded that the informant . . . was ''credible'' or his information ''reliable.'' ' '' (386 U.S. at p. 304 [18 L.Ed.2d at p. 67].) We followed *McCray* in *Martin* v. *Superior Court* (1967) 66 Cal.2d 257 [57 Cal.Rptr. 351, 424 P.2d 935].

Subdivison (c) of section 1042 of the Evidence Code which became effective in 1967 provides that in certain cases evidence of information communicated to a peace officer by a confidential informant who is not a material witness to guilt or innocence as to the charged offense ''shall be admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant

be disclosed if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure.''

The exception to *Priestly* and *Coy* set forth in *McCray* and subdivision (c) of section 1042 can have no application where, as here, the only evidence as to reliability of the informer or credibility of his information, is the officer's opinion that he is reliable, without any showing of the underlying circumstances or any factual proof in court as to reliability and credibility.

It follows that, whether we apply the rules existing at the time of defendant's trial or the current rules, the information received from the unidentified informer may not be considered on the issue of probable cause. Counsel pointed out to the trial court that the information could not be used. Apart from that information, there is no other evidence which would furnish probable cause for an arrest or search of Cooper, and on the record before us we must conclude that the search of Cooper was unlawful. The succeeding events were so intimately connected with the officers' unlawful conduct that the evidence acquired must be held to be the result of that conduct. Without that evidence, there is no substantial evidence of guilt of the crime charged.

The judgment is reversed.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. The majority opinion holds that ''the search of Cooper was unlawful, his consent to the entry of his hotel room is [therefore] invalid, and the evidence secured by the prosecution as the fruit of that consent is inadmissible.'' However, the record does not show that the search of Cooper was unlawful, and in the trial court defense counsel did not claim specifically that Cooper's search was unlawful (nor is the matter argued by the parties in their briefs on appeal).[1]

---

[1]In the trial court defense counsel stated in relevant part, ''Officer Ladner said that Cooper was [*sic*] under arrest. [Ladner had testified to the contrary.] [Cooper] was taken to the station, but he was certainly under arrest. He also was searched apparently before the officer went into the room. Certain moneys were found on him. I don't know if it [apparently Cooper's consent to enter his room] was involuntary or otherwise. There have been recent cases which the Supreme Court, on the

By ruling that the heroin could be admitted in evidence the trial court made an implied finding that Cooper effectively consented to the entry of his room (a finding defendant does not challenge in his briefs on appeal). Whether an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority is a question of fact to be determined in light of all the circumstances. (*People* v. *Fischer*, 49 Cal.2d 442, 448 [317 P.2d 967].) Here in addition to proof of apparent consent by Cooper to the entry of his room, there was evidence, among other things, that when he gave that consent only two officers were present, that they were then in the hallway near his room, and that he was not under arrest. Since defense counsel did not clearly raise the question of the validity of the search of Cooper, it manifestly would be unreasonable to require the prosecution, in order to meet its burden of showing proper justification for the search of Johnson (see e.g. *People* v. *Lara*, 67 Cal.2d 365, 373 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Henry*, 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557]; *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23]), to introduce proof of the lawfulness of the search of Cooper to negate any possibility Cooper's search was unlawful and rendered ineffective his consent to the entry of his room.

In my opinion the record supports the trial court's implied finding that Cooper effectively consented to the entry of his room. As will hereafter appear, the observations of the officers inside that room together with other matters known to them clearly established probable cause for defendant's arrest, and the search of defendant was lawful as an incident thereto.

According to Officer Ladner, when defendant opened the door Miers identified himself as a police officer. Miers denied this but stated that on an earlier occasion he had revealed himself to defendant as a police officer. The officers further testified: On seeing them, defendant appeared surprised and

---

question of whether consent is really free, and of the recent *Haven* case in which the— THE COURT: You have no basis to attack the consent in this case? [Defense counsel]: Except the entire situation is one that doesn't, in my estimation, ring really completely true, whether this is consent by Cooper or simply a submission, and the same thing is true when they get into the room. I think it is an entire picture that can't be—the officers went there. The information from the informant is no longer able to be considered, because of the officers not revealing the identity. The act of the defendant in the room—'' The court stated, ''I can't agree that it doesn't ring true. . . .'' and subsequently received the heroin in evidence.

nervous and immediately backed away four or five feet, turned his back toward the officers, bowed his head, and put his hand toward his face. Miers asked him to turn around and open his mouth, defendant did so, Miers saw a balloon inside defendant's mouth and told him to spit it out, and defendant complied. Miers opened the balloon and saw that it contained a powder which later proved to be heroin. Miers, who had made numerous narcotics arrests, testified that in "this particular area" (apparently of the hotel) most people who possess heroin carry it in balloons inside their mouths in order to be able to swallow it should they be apprehended. Defendant was arrested after Miers looked inside the balloon.

Defendant testified: He had the balloon in his mouth when he opened the door. Miers did not identify himself as a police officer, and defendant did not know Miers was an officer, although defendant had seen him around the neighborhood "stopping people." After defendant turned his back on the officers, Miers grabbed him by the back of his neck, applied pressure there, and told him to open his mouth and "Spit it out." He opened his mouth, and Miers pulled out the balloon.

In rebuttal, Miers denied placing his hands on defendant's neck or choking him, and Ladner stated he did not see Miers place his hand on defendant's neck or choke him.

The officers had no search warrant or warrant for defendant's arrest; however, a peace officer may arrest a person without a warrant "Whenever he has reasonable cause to believe that the person to be arrested has committed a felony. . . ." (Pen. Code, § 836.) "Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. (*Beck* v. *Ohio*, 379 U.S. 89, 96 [13 L.Ed.2d 142, 147, 85 S.Ct. 223]; *People* v. *Schader*, 62 Cal.2d 716, 722 [44 Cal.Rptr. 193, 401 P.2d 665].)" (*People* v. *Talley*, 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].)

Here the officers testified they had received specified information from a "reliable informant." On cross-examination defense counsel asked for the informer's name, and the officer replied he did not wish to reveal the name because the person's life might be endangered if he did so. The court stated it did not want to endanger anyone's life and did not require disclosure. Defense counsel did not move to strike the officers' testimony but thereafter stated, "The information

from the informant is no longer able to be considered, because of the officers not revealing the identity."

Assuming that under the foregoing circumstances defendant can now raise the problem of nondisclosure (see *Coy* v. *Superior Court,* 51 Cal.2d 471, 473 [334 P.2d 569]; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 819-820 [330 P.2d 39]; *People* v. *Postell,* 170 Cal.App.2d 31, 34-37 [338 P.2d 454]), disclosure was not required if apart from the informer's information there was probable cause for defendant's arrest. (*People* v. *Hunt,* 216 Cal.App.2d 753, 756-757 [31 Cal.Rptr. 221]; *People* v. *McMurray,* 171 Cal.App.2d 178, 183 [340 P.2d 335]; see *People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19].)

In the present case apart from the informer's information the officers knew that defendant was in the apartment of an admitted narcotics user; that two or three months before, defendant had been by a grocery store in an area frequented by narcotics peddlers; that on seeing the officers defendant appeared surprised and nervous, backed away, turned around, bowed his head and put his hand toward his face; and that in the area of the hotel most people who possess heroin carry it in balloons inside their mouths in order to be able to swallow it. There was thus probable cause for defendant's arrest apart from the informer's information. (Cf. *People* v. *Sanchez,* 189 Cal.App.2d 720, 722 [11 Cal.Rptr. 407]; *People* v. *Pendarvis,* 178 Cal.App.2d 239, 240-241 [2 Cal.Rptr. 824]; *People* v. *Taylor,* 174 Cal.App.2d 448, 451-452 [344 P.2d 837].)

It is immaterial that the search preceded the arrest because they were "substantially contemporaneous" and before making the search the police had probable cause for the arrest. (*People* v. *Williams,* 67 Cal.2d 226, 229 [60 Cal.Rptr. 472, 430 P.2d 30]; *People* v. *Cockrell,* 63 Cal.2d 659, 666-667 [47 Cal.Rptr. 788, 408 P.2d 116].)

There is no merit to a claim by defendant that a confession inadmissible under *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], was introduced at his trial. Officer Miers testified that after defendant spit out the balloon, he "questioned the defendant about [its] contents" and that defendant stated that it contained "five . . . bags of smack," that he had "the stuff" for about two days, that Cooper knew nothing about "this stuff," that defendant had paid $50 for ten bags and had used five of them, and that he had been using "the stuff" for six years.

A defendant's statements cannot properly be introduced into evidence where (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, and (4) the authorities had not effectively informed the defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights. *Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490-491 [12 L.Ed.2d 977, 985-986]; *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354.) To determine whether ''a process of interrogations'' had been undertaken, we must apply an objective test and ''anlayze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.'' (*People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97].)

Here the officers were engaging in normal investigatory questioning. The exact length of the interrogation does not appear but it apparently was of short duration. The questioning occurred at the scene of the arrest after defendant ''spit out'' the balloon, and defendant was questioned about its contents. Afterwards the officers examined those contents and then arrested defendant. In light of the total situation that enveloped the questioning it appears that the purpose of the officers was to afford defendant an opportunity to explain away what appeared to be a crime committed in their presence. (Cf. *People* v. *Alesi,* 67 Cal.2d 856, 863-865 [64 Cal.Rptr. 104, 434 P.2d 360]; *People* v. *Perez,* 65 Cal.2d 709, 715 [56 Cal.Rptr. 312, 423 P.2d 240]; *People* v. *Cotter,* 63 Cal.2d 386, 393 et seq. [46 Cal.Rptr. 622, 405 P.2d 862] [vacated on another ground in 386 U.S. 274 [18 L.Ed.2d 43, 87 S.Ct. 1035]]; *People* v. *Brooks,* 234 Cal.App.2d 662, 667 et seq. [44 Cal.Rptr. 661].)

I would affirm the judgment.

McComb, J., and Mosk, J., concurred.

Respondent's petition for a rehearing was denied June 26, 1968. Mosk, J., and Burke, J., were of the opinion that the petition should be granted.