AMERICAN SAMOA GOVERNMENT, Plaintiff

v.

HARRY TAYLOR aka TAPU AVALOGO TAYLOR, Defendant

High Court of American Samoa
Trial Division

CR No. 8-90

May 14, 1991

Before REES, Associate Justice, VAIVAO, Associate Judge, LOGOAI, Associate Judge.

Counsel: For Plaintiff, Thomas E. Dow and Jeffrey Buckner, Assistant Attorneys General
For Defendant, Barry I. Rose, Assistant Public Defender

On Motion to Dismiss and on Motion to Supress Evidence:

Defendant moves to suppress two statements he is alleged to have made to police officers on the grounds that the circumstances under which these statements were taken violated his Fifth and Sixth Amendment rights.

Defendant also moves for dismissal of the charges against him on the ground that the prosecution of the case is based on information derived from these two statements and from other allegedly impermissible sources, rather than on "independent investigative efforts."

The first of the two statements was a one-sentence response the defendant made when a police officer asked him "What happened?" This statement appears to have been made by the defendant of his own free will. No Miranda warnings had been given before the police officer asked the defendant "What happened?," but under the circumstances this does not render the statement inadmissible as evidence. The defendant was not in custody: he had not been arrested, handcuffed, physically restrained in any way, or told directly or indirectly that he was not free to go. Nor was the statement made in the course of anything that could remotely be called a process of custodial "interrogation." The police officer asked the defendant "What happened?" immediately upon

encountering him a short distance from the scene of the incident in question. Although the police officer had just been given information implicating the defendant in the crime for which he was eventually charged, the two-word question appears to have been "investigatory" rather than "accusatory." That is, the officer was trying to gather preliminary and general information, rather than to elicit a confession. *See People v. Wright*, 66 Cal. Rptr. 95 (Cal. App. 1968). The motion to suppress this statement is denied.

The second statement was made the next day at the Correctional Facility in response a process of custodial interrogation. A number of most unpleasant things had happened to the defendant during the twenty-two hours since his arrest. He had been assaulted twice by a ranking police official, stripped of all his clothing, held for about twenty hours in a cell without a bed or mattress, held incommunicado without access to visitors, and subjected to the shining of a flashlight in his face at frequent intervals during the night.

The defendant was not interrogated until the next afternoon. By then his clothing had been returned, and he had been offered food. The two interrogators had taken no part in any of the events of the night before, and the interrogation itself was neither explicitly threatening or even impolite. Arguably, there had been a sufficient break in the flow of events to render the defendant capable of making a fully voluntary statement, notwithstanding the intimidating circumstances to which he had been exposed during the early hours of his incarceration.

The preponderance of the evidence, however, is to the effect that the defendant told the interrogators that he wished to have a lawyer before he made a statement. The response from one of the interrogating officers was to the effect that he should go ahead and make a statement and that a copy of the statement would be given to his lawyer. The effect of this response, at least against the backdrop of what had happened to the defendant the night before, was to give him the impression that making a statement to the police was his ticket of admission to the legal process. This was an impermissible impression for the officers to give the defendant. Once he had invoked his right to counsel, they had an obligation not to ask any further questions until he had been allowed to consult a lawyer. Instead, it appears that the officers proceeded with the interrogation.

The defendant then signed and initialled a series of written waivers (including one that said he did not want a lawyer) and gave a

107

lengthy statement. It is clear that his attitude during this part of the interrogation was cheerful and cooperative and that the interrogators continued to be polite and friendly. It appears that defendant, a man of extremely limited intellect and education, genuinely wanted to explain himself; although he had a hazy recollection that he was entitled to a lawyer and should not make a statement until he consulted with one, he was willing enough to go along with the officer's explanation that the statement came first, the lawyer later. To say that the defendant's "will was overborne" as a result of the initial denial of his right to counsel, therefore, is at best an imperfect metaphor. Nevertheless, the United States Supreme Court has made it clear that when a defendant invokes his right to counsel, the interrogation is to cease until he has been afforded that right. If the interrogation proceeds in violation of this rule, the resulting statements of the defendant may not be used as evidence against him --- not even statements which, but for the initial invocation of the right to counsel, would seem thoroughly voluntary. *See Brewer v. Williams*, 430 U.S. 387 (1977). The second statement must therefore be suppressed.

When a statement is suppressed as having been taken in violation of the defendant's right to counsel, the suppression applies not only to the statement but also to any information the government may have discovered as a result of the statement, unless such information would have been "ultimately or inevitably" discovered even without the statement. *Nix v. Williams*, 467 U.S. 431, 448 (1984).

Defendant does not move to suppress any particular evidence alleged to have been discovered by the government as a result of the suppressed statement. Instead, he moves for dismissal of the charges unless the government can affirmatively show that it can convict him without the use of any such evidence. This motion is denied. The limited record now before us not only fails to show that the government plans to present any impermissible evidence but also indicates that the government does have substantial evidence --- e.g., a body, a pathologist's report, an arguably inculpatory statement that has not been suppressed --- which was not discovered as a result of the suppressed statement. If the government does plan to use any evidence which it discovered as a result of this statement, it should so notify the Court at the outset of trial and should be prepared to show that it would have discovered such evidence in the absence of the statement.

It is so ordered.